MICHAEL J. O'BRIEN v. COLCHESTER RUBBER COMPANY.[1]

April 26, 1895.

No. 9476.

### Commission on Sale of Goods—Acceptance of Orders.

The plaintiff sold goods for defendant, a manufacturer, under an agreement ·that he should receive a percentage, as his compensation, on all orders taken, sent in, and accepted, and also that he should be notified in case of defendant's refusal to accept any of the orders sent in.   *Held*, in an action to recover such percentage, that acceptance of the orders might be inferred from the fact that defendant received and retained them, without objection or notification that they had been rejected.

### Verdict Sustained.

*Held*, that the verdict was supported by the evidence.

[1] Reported in 63 N. W. 106.

Appeal by defendant from an order of the district court for Ramsey county, Brill, J., denying a motion for a new trial. Affirmed.

*Humphrey Barton*, for appellant.

*H. H. Herbst* and *S. M. Hayes*, for respondent.

COLLINS, J.[2]    In this case, with less than $200 actually in dispute, we are met with a paper book of over 200 pages, nearly all thereof being devoted to a report of the trial.* The real contention was and is over the facts, and until confused and complicated by a great mass of testimony produced, and by numberless objections and exceptions by counsel as this testimony was presented, these facts seem to have been very simple.

Prior to January 1, 1893, plaintiff had been selling rubber goods for defendant, the manufacturer, on a commission of 5 per cent. After some correspondence, the latter wrote November 11, 1892, that "if we do not change our mind about it, on account of the dull state of affairs," it would engage the former for a three months' trip, and would allow his actual traveling expenses, a nominal salary of $10 per week, and a commission of 2 per cent. on net sales made in excess of $15,000. It was said in this letter that the plaintiff could easily sell $25,000 worth of goods, and in an earlier letter he was informed that orders taken by him should be duly signed and be from parties in good rating. The plaintiff wrote immediately, accepting the proposition. In December he was advised by mail that defendant wanted him to start as early as January 9 on the proposed trip, and that its president would soon see him personally with full particulars, samples, and funds. December 27, at St. Paul, the president met plaintiff and four other men who also wished to sell defendant's goods, and each was engaged, to commence work January 9. The plaintiff was also authorized to sell during the intervening time on the old terms,—5 per cent. commission. Thus far there is no dispute over the facts.

The plaintiff claims, however, that when these five men were finally employed it was agreed by defendant's president that if they would make a special and unusual effort to sell goods during the trip each should receive one-fifth of 1 per cent. on his gross sales as additional compensation. He contends that he did make special and

[2] Buck, J., took no part.

unusual effort to sell, was successful, and is entitled to the extra compensation. That he sold more goods than defendant expected, according to the letter of November 17, is apparent. The defendant seems to admit that there was some proposition of this nature, but claims that extra pay was made to depend upon the aggregate sales made by the five men, and, as there was no evidence as to the amount of the aggregate sales, plaintiff was not entitled to recover on this branch of his case. The questions of fact for the jury really were, on what orders obtained and sent in by plaintiff, both before and after January 9, was plaintiff entitled to commissions? and, further, was he entitled to the one-fifth of 1 per cent. on any of these orders, in addition to the 2 per cent.? These were the questions which were passed on by the jury. As to the right of plaintiff to recover the fraction of 1 per cent. in addition to the 2 per cent., this depended upon the finding of the jury as to what was agreed upon, and evidently plaintiff's version of the contract was accepted.

The defendant's counsel argues that, as plaintiff had theretofore stipulated to work exclusively for defendant on the terms proposed in the letter, there was no consideration for the promise of extra compensation. It is plain that no binding contract was entered into until defendant's president met plaintiff in St. Paul, and this promise of additional compensation was a part of the contract as finally consummated. Even if this was not the fact, no valid reason can be advanced for holding that defendant would not be bound by its agreement to pay additional compensation for extra service and increased activity on the part of its salesmen. Therefore the plaintiff was entitled to recover the additional percentage on all orders taken, sent in, and accepted after January 9. As to these there was no dispute as to what were taken and sent in by him. It was admitted by defendant that the greater part of these were accepted, and that plaintiff had earned his percentage. And it was admitted by plaintiff that several of the balance were properly rejected by defendant, of which rejection he was notified, and that as to these he had no claim upon the latter.

The contention was over a number of orders, the acceptance of which was denied by defendant. The defendant's office was in the state of Connecticut, and it did not produce its books of account upon the trial, although such production was twice demanded by plain-

tiff's attorney. It appeared upon the trial that at the time of the formal hiring, in December, 1892, it was agreed by the parties that the plaintiff should be duly notified if any of the orders sent in were rejected, and it also appeared that this was done in many instances by letters sent to the latter. It is not claimed that commissions were allowed by the jury upon any of these orders. The plaintiff also produced a letter from defendant in which plaintiff was advised that orders might be held in suspense while looking up the responsibility of the parties ordering, and in case such orders were accepted they would be accounted for in the next statement made to him, "but, if not, we will notify you of their rejection." The plaintiff also produced a statement of what disposition was made of all orders sent in, prepared and forwarded by defendant's bookkeeper. And at the trial the defendant offered, and there was read to the jury, the deposition of defendant's president, to which was attached a statement of like import to, but bearing date about eight months later than, the statement furnished by the bookkeeper. That the verdict could not be sustained if it depended wholly upon these statements seems to stand conceded, but it does not. There was other testimony from which it appeared that neither of these statements was correct, and, in addition to this, it is evident that the statements themselves did not coincide as to many of the orders. There were quite a number of discrepancies and contradictions in the statements, which tended to cast doubt upon the correctness and reliability of each. In one, at least, orders were treated as rejected which by the other were shown to have been filled, and in both several orders appear among those rejected, of which rejection no effort was made to notify the plaintiff. In its charge, and with reference to the duty resting upon defendant to advise plaintiff of the rejected orders, the court stated that, the orders being sent in and retained by defendant, the latter making no objection, they could be taken as accepted. Its attention being called to this part of the charge, the jury was further instructed by the court that retaining the orders would not be conclusive upon defendant, but that from such retention without objection the jury might infer acceptance. This instruction also covered the only order in dispute taken prior to January 9. Defendant's counsel does not really complain of this part of the charge, and certainly had no reason for so doing. In view of it, there can be no.

doubt of the sufficiency of the evidence to support the verdict. No special reference need be made to the remaining assignments of error, for they are all covered by what has been said.

Order affirmed.